The Clinton Company, a corporation, v. Commissioner.
Clinton Co. v. Commissioner
Docket No. 3099.
United States Tax Court
1945 Tax Ct. Memo LEXIS 192; 4 T.C.M. (CCH) 532; T.C.M. (RIA) 45175; May 17, 1945
*192 Josepl W. Townsend, Esq., for the petitioner. David F. Long, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax liability for the calendar year 1940 in the amount of $1,714.65, and in income and excess profits tax for the calendar year 1941, in the respective amounts of $2,429.93 and $3,992.55, resulting from the disallowance, as unreasonable, of part of the deduction claimed for compensation paid its president and vice-president. Findings of Fact Certain facts have been stipulated, and we find them to be as stipulated. Only those stipulated facts necessary to an understanding of the issue involved are set out here, together with the pertinent facts found by us from the testimony adduced at the hearing. Petitioner is an Illinois corporation, having its principal office and place of business in Chicago, and filed its income and excess profits tax returns for the years 1940 and 1941 with the collector of internal revenue for the first district of Illinois, at Chicago. Petitioner was incorporated in 1928, and is engaged in the business of manufacturing and selling lacquers, *193 paints, enamels, synthetics, stains, shellac, varnishes and adhesives. At the beginning of 1940, petitioner had outstanding 781 shares of capital stock of a par value of $100 per share. During the year 1941, 35 additional shares were issued. The names of the stockholders and the percentages of their holdings of the stock of the corporation in 1940 and 1941 are as follows: 1940
1941
D. L. Clinton
33.30
32.10
R. H. Clinton
31.60
30.30
Inez F. Clinton
18.40
17.70
L. Cudden
1.00
1.00
Others
15.70
18.90
Total
100
100
During the tax years and since the death of his father in 1938, D. L. Clinton has been president of petitioner, and his brother, R. H. Clinton, Jr., has been vice-president. Both were directors. Inez F. Clinton, their mother, was secretary and a director. J. W. Townsend, a cousin, was a director. The fifth director was J. R. Porter, who was not related to the Clinton family. L. Cudden was assistant secretary-treasurer. D. L. Clinton had been with the petitioner corporation since its organization. He was secretary of the company at first, and later vice-president. His father was president until his death in 1938. During those years *194 D. L. Clinton spent most of his time selling. When he succeeded to the presidency in 1938, he continued to sell to the accounts which he had previously handled. He spent about half of his time selling, after he became president. He called on the customers personally during the tax years, and actively solicited the business. In many cases, old customers have been handling new types of materials, or manufacturing new items, in recent years, and in such cases D. L. Clinton contacted them to find out what they were making, how they were making it, and of what materials, and what type of finishing materials they required, and generally to advise them in the choice and use of finishes. Petitioner chiefly serves the industrial field, manufacturers of wood and metal products that use protective coatings, and manufacturers and installation contractors of insulating material, wall board, accoustical tile, which require the use of adhesive products. Most of the business done by petitioner is on special order, designed for certain specific uses. It owns no patents, and, the business is highly competitive. Selling has always been its most important aspect. In 1940, D. L. Clinton made sales totalling *195 $168,859.47, and in 1941, $206,271.91. In addition to his sales activity, D. L. Clinton had direct supervision of the company's business as a whole, including the purchasing and the manufacturing. He received, as compensation for his services in 1940, the sum of $18,000, and in 1941, $28,800. R. H. Clinton, Jr., has worked for petitioner since 1931. He was vice-president and director in 1940 and 1941. He also acted in the capacity of sales-manager and continued to solicit, actively and personally, the customers whom he had served in prior years, in addition to his executive duties. He made sales totalling $106,358.05 in 1940, and $133,581.12 in 1941. He received, as compensation for his services, in 1940, the sum of $15,200 and in 1941, the sum of $26,600. Petitioner's net sales, gross income, earnings before deducting officers' salaries, but after Federal taxes, and officers' compensation at the end of each year beginning with 1929, through the tax years, were as follows: Earnings
Before Deducting
Officers' Compensation
(Including Bonuses)
Officers' Com-
but After Deducting
pensation (In-
Year
Net Sales
Gross Income
Federal Taxes
cluding Bonuses)
1929
$130,941.06
$ 25,412.31
$ 4,987.32
$ 9,799.99
1930
122,305.41
23,008.93
1,964.58
11,600.00
1931
130,823.14
34,220.29
13,772.33
12,800.00
1932
94,235.64
26,886.90
11,449.77
11,170.00
1933
122,990.95
34,493.63
10,388.04
10,068.30
1934
172,457.93
44,239.47
19,552.38
14,727.50
1935
203,540.48
59,685.66
32,385.08
16,680.77
1936
299,554.24
83,362.60
42,363.28
20,863.47
1937
365,041.54
98,843.16
40,475.65
25,750.43
1938
331,336.70
109,382.19
47,732.62
27,761.10
1939
458,475.08
153,469.90
73,977.47
35,240.73
1940
465,049.66
147,466.02
* 67,042.11
** 41,250.00
1941
672,994.15
209,005.75
* 99,157.10
** 64,076.68
*196 The net earnings or loss after deducting officers' compensation and Federal taxes, net income, or loss, reported before Federal taxes are deducted, dividends paid, and surplus or deficit, of petitioner at the end of each of the years from 1929 through 1941, were as follows: Net Earnings
or (Loss) after
Net Income
Deducting Officers'
or (Loss)
Compensation
Reported Before
Surplus or
(Including Bonuses),
Federal Taxes
Dividends Paid
(Deficit)
Year
and Federal Taxes
are deducted
Cash
Stock
End of Year
1929
($ 4,812.67)
($ 4,812.67)
None
None
($12,619.56)
1930
( 9,635.42)
( 9,635.42)
None
None
( 22,254.98)
1931
972.33
972.33
None
None
( 21,282.65)
1932
279.77
324.37
None
None
( 20,958.28)
1933
319.74
485.04
None
None
( 20,571.84)
1934
4,824.88
5,736.55
None
None
( 14,958.18)
1935
15,704.31
18,176.06
None
None
746.21
1936
21,499.81
24,072.37
$21,157.21
None
1,088.81
1937
14,725.22
16,738.90
299.75
$11,800.00
3,714.28
1938
19,971.52
23,835.25
None
None
23,685.80
1939
38,736.74
50,425.06
6,248.00
None
56,174.54
1940
* 25,792.11
35,925.11
6,248.00
None
75,718.65
1941
* 35,080.42
55,588.87
None
None
110,799.07
*197 The compensation paid to the petitioner's officers from 1936 through 1941, was as follows: 1936
1937
1938
R. H. Clinton, Sr.
$ 6,400.00
$ 8,000.00
$ 5,333.28
D. L. Clinton
6,250.00
8,300.00
9,000.00
R. H. Clinton, Jr.
5,000.00
6,000.00
7,250.00
L. Cudden
3,213.47
3,450.00
3,511.10
Inez F. Clinton
2,666.72
Totals
$20,863.47
$25,750.00
$27,761.10
1939
1940
1941
R. H. Clinton, Sr. (Died August 8, 1938)
D. L. Clinton
$15,000.00
* $18,000.00
* $28,800.00
R. H. Clinton, Jr.
12,200.00
* 15,200.00
* 26,600.00
L. Cudden
4,074.07
4,450.00
5,076.68
Inez F. Clinton
3,966.66
3,600.00
3,600.00
Totals
$35,240.73
$41,250.00
$64,076.68
The compensation paid by petitioner to D. L. Clinton and R. H. Clinton, Jr., for the years 1939 to 1941, consisted of salary and bonus, in the following amounts: D. L. Clinton
Salary
Bonus
Total
1939
$ 9,000
$ 6,000
$15,000
1940
10,000
8,000
18,000
1941
10,800
18,000
28,800
R. H. Clinton, Jr.
1939
$ 7,200
$ 5,000
$12,200
1940
8,200
7,500
15,200
1941
9,600
17,000
26,600
*198 Of the total amount of $18,000 paid D. L. Clinton in 1940, respondent disallowed the deduction of $3,000, resulting in an approved deduction of $15,000. Of the $28,800 paid him in 1941, respondent disallowed $6,000, resulting in an approved salary deduction of $28,800. Of the total amount of $15,200 paid R. H. Clinton, Jr. in 1940, respondent disallowed $3,000, resulting in an approved deduction of $12,200. Of the $26,600 paid him in 1941, respondent disallowed $6,000, resulting in an approved allowance, of $20,600. Petitioner generally paid the salesmen employed by it a commission of 10 percent and expenses. Some are paid salaries, bonuses and expenses. The compensation paid by petitioner to its president and vice-president in 1940 was reasonable. A reasonable allowance for salaries to petitioner's president and vice-president for the year 1941 was not in excess of the amounts determined by the respondent. Opinion KERN, Judge: The question here is wholly one of fact, whether the compensation, consisting of salaries and bonuses, paid by petitioner to its president and vice-president in 1940 and 1941 constitute reasonable compensation for their services, so as to be allowable *199 as deductions for income tax purposes. For 1940, the president and vice-president were paid $18,000 and $15,200, respectively, and the respondent disallowed the deduction of $3,000 of each amount. Petitioner is a small corporation, largely, though not wholly, owned and controlled by members of one family. The two officers in question owned more than 60 percent of the stock, and their mother owned approximately 18 percent. One of their cousins was a director, though not a stockholder. Between 15 and 20 percent of the stock, in the tax years involved, was held by others. Respondent has allowed as reasonable compensation to petitioner's president and vice-president for 1940 the same amounts which were paid in 1939. It is respondent's position that the increases, amounting to $3,000 for each officer, were unreasonable and excessive, and he has disallowed any increases in salaries. The evidence shows that the corporation's net sales increased from $458,475 in 1939 to $465,049 in 1940, and that, after payment of all expenses, including taxes and salaries, as well as a dividend of $8 per share, the corporate surplus at the end of the year had increased from $56,174 to $75,718. While *200 the earnings of the company were somewhat less than they had been in the previous year, they were very satisfactory. The fiscal history of the corporation reflects the efforts of its officers and stockholders to build up its financial structure to a point of comfortable security after several years of deficit operations during the depression. These particular facts serve to cast some doubt upon the fairness of the use of any previous year of operation as an exact standard of measurement for the reasonableness of the 1940 salaries. Though 1939 salaries from the standard of comparison closest in point of time, the 1940 salaries must be judged, as to their reasonableness or unreasonableness, in view of all the facts, including the financial history of the corporation in other years. Though petitioner has, of course, the burden of proof, the facts here do not subject the corporation's action in paying the compensation in question to the same degree of scrutiny as would be proper if the officers to whom payment was made owned all of petitioner's stock, or if the salaries involved had exhausted the earnings, or were markedly disproportionate thereto, or if no dividends had been paid, *201 or if the officers' services had not been admittedly valuable, and demonstrably productive of substantial benefit to the corporation. The record shows that D. L. Clinton personally made sales totalling $168,859 in 1940, and that R. H. Clinton, Jr. made sales totalling $106,358, in addition to their executive duties. Though they were not paid on a commission basis, the corporation generally paid its salesmen at 10 percent commission on sales. Measured by that fact, the services of these officers in the sales field alone were of a value not too far remote from the compensation received by them. The improved condition of the company, and the continued increase in the amount of its business, the quality and character of the officers' services, as shown by the evidence, are sufficient to demonstrate the error of the respondent's determination that the compensation, to the extent of $3,000 as to each officer, was excessive. In 1941, petitioner paid a total of $28,800 to D. H. Clinton, its president, and $26,600 to R. H. Clinton, Jr., its vice-president. These amounts represented an increase of $10,800 for the former, and of $11,400 for the latter, or, expressed in percentages, an increase *202 of 60 percent and 75 percent of the respective salaries paid in the preceding year. Respondent disallowed $6,000 of each amount, thus, in effect, approving increases over 1940 amounting to $4,800 for D. L. Clinton and $5,400 for R. H. Clinton, Jr., or, again expressed in percentages, increases of 26 percent and 35 percent of the salaries paid in the preceding year. The net sales of the company increased from $465,049 in 1940 to $672,994 in 1941; the gross income from $147,466 in 1940 to $209,005 in 1941; the earnings, after taxes and before deducting officers' salaries, increased from $67,042 to $99,157; the earnings, after both taxes and officers' salaries, from $25,792 to $35,080. The corporate surplus arose from $75,718 to $110,799. Sales were made by D. L. Clinton in 1941 in the amount of $206,271.91, and by R. H. Clinton, Jr. in the amount of $133,581.12. These facts certainly indicate a continuing and increasing corporate prosperity, and the rendering of further valuable services by petitioner's officers. They provide support, we think, for the allowance of increased compensation to the officers in question. But the respondent has not disallowed the entire increase, having *203 allowed the deduction of amounts which are substantially in excess of the compensation paid in prior years. To that determination there attaches a presumption of correctness which we think has not been overcome by the evidence, and we therefore hold there was no error in the respondent's determination for the year 1941. Decision will be entered under Rule 50. Footnotes
*. Federal taxes deducted in determining these amounts were taken from petitioner's 1940 and 1941 returns and said taxes are at issue in this proceeding. ↩
**. Officers' compensation (including bonuses) at issue in this proceeding.↩
*. Federal taxes deducted to determine these amounts were taken from 1940 and 1941 returns and said taxes are at issue in this proceeding.↩
*. Officers' compensation at issue in this proceeding.↩